UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
VICTOR ACOSTA,                   :    **FOR FULL PUBLICATION**

               :

        Petitioner   :

               :

     - against-      :

               :

C. ARTUZ, Superintendent,  :

Green Haven Correctional Facility,  :   <u>MEMORANDUM</u>

               :   <u>AND ORDER</u>

       Respondent.   :

               :   Civil Action No.

               :   CV-97-3733 (DGT)
------------------------------------X

TRAGER, J.

In this petition for a writ of <u>habeas</u> <u>corpus</u>, pursuant to 18 U.S.C. § 2254, petitioner Victor Acosta challenges his New York State murder conviction. The petition, previously dismissed by this court, has been remanded by the Second Circuit for the sole purpose of determining if petitioner's incriminating statement following a lineup was obtained in violation of his Sixth Amendment right to counsel. For the reasons that follow, the petition is dismissed.

## Background

(1)

On the evening of November 1, 1991, Dennis Cetter was fatally stabbed inside an abandoned factory at North 10th Street and Kent Avenue. Debra Perry, a homeless prostitute who lived in the factory, was with Cetter during the attack. According to Perry, she and Cetter had been using illegal drugs together when

petitioner entered her room and tried to rob her and Cetter. Cetter tried to strike petitioner with a bat, whereupon petitioner stabbed Cetter thirteen times and then fled.

Darryl Higgs, a homeless drug user who lived with Perry at the factory but was standing outside at the time, heard Perry's screams, whereupon he came to her aid and witnessed petitioner running away from the factory. Cetter, covered in blood, emerged from the factory and collapsed in Higgs' arms. Higgs heard Cetter speak of petitioner and heard Perry screaming "Green Eyes" – the name by which both Higgs and Perry knew petitioner. Perry then summoned firemen from a nearby firehouse. Higgs and Perry both spoke to police detectives who arrived shortly thereafter.

On November 3, 1991, the police arrested petitioner after responding to a tip. Higgs and Perry identified petitioner in a lineup that same day. After the lineup, petitioner made a statement to the arresting officer, claiming he had stabbed Cetter in self-defense.

(2)

Petitioner was charged by a Kings County Grand Jury with two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[1], [3]); one count of Robbery in the First Degree (N.Y. Penal Law § 160.15[3]); and one count of Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01[2]).

A pretrial suppression hearing, held August 13-14, 2002

before Justice James Starkey, established the following: On the evening of November 1, 1991, New York City Detectives Nancy Gaffney and Ramon Aguilar[1] were assigned to investigate Cetter's murder. Detective Gaffney interviewed Perry, while Detective Aguilar interviewed Higgs, both of whom reported they hade known "Green Eyes" from before the attack. They described "Green Eyes" as a male Hispanic with long dark hair, 5'8" tall, and weighing 150 pounds. Perry also told Gaffney that "Green Eyes" had previously been arrested for stabbing a man named "Indio." Through a computer search, detectives were then able to obtain a photograph of petitioner along with his real name. On November 2, Detective Aguilar showed this photograph to Perry, who identified the person depicted as Green Eyes.

On November 3, Detective Gaffney and two other officers arrested petitioner at the corner of North 7th Street and Kent Avenue after responding to a phoned-in tip. Several hours after petitioner's arrest, at about 5:45 p.m., Detective Aguilar informed petitioner of his <u>Miranda</u> rights. Petitioner then asked for an attorney, and the police ceased questioning him about anything other than pedigree information. Then, at about 6:19 p.m., Perry, Higgs and a third witness separately viewed a six-

---

[1]This detective gave his name as "Aguilar" in the hearing transcript (where he spelled it out), but the name appears as "Aguilera" in the trial record, in some of the pleadings and in the order of the Second Circuit.

member lineup and identified petitioner as the murderer.

After the lineup, petitioner informed Detective Aguilar that
he wished to speak to the district attorney.  Detective Aguilar,
after consulting with the assistant district attorney, informed
petitioner that the district attorney could not speak to him
without an attorney present.  See Hr'g. Tr. at 22-25.  Shortly
thereafter, Detective Aguilar took petitioner to a second-floor
bathroom to prevent petitioner from seeing any of the witnesses.
See id. at 25.  There, petitioner told Detective Aguilar that he
had entered the factory on November 1 with the intent to commit a
robbery and had stabbed Cetter in self-defense after Cetter
attacked him with a baseball bat.  He also mentioned that he had
been smoking crack that night and believed that Cetter and Perry
had smoked crack as well.  See id. at 25-26.  Detective Aguilar
claimed that he did not interrogate petitioner or restate any
Miranda warnings.  He could not recall whether or not he had
discussed the results of the lineup with him.  See id. at 43-44.

The hearing court credited the testimony of prosecution
witnesses and issued findings of fact consistent with the above
summary.  See id. at 83-89.  Specifically, the hearing court
found that Detective Aguilar had taken petitioner to the men's
room in order to avoid contact with witnesses, and that while in
the men's room, petitioner made a statement without any
interrogation or invitation to speak on the part of Detective

Aguilar. See id. at 87. The hearing court made no findings of
fact concerning whether petitioner had been informed of results
of the lineup before making his statement.

Petitioner went to trial in April 1993 before Justice Jerome
Kay. Higgs and Perry both testified for the prosecution in a
manner consistent with summaries given above. A third witness, a
prostitute, testified that on the day of the killing, petitioner
had given her a bloody knife, told her he had just stabbed
someone and ordered her to clean the knife. Various law
enforcement officers and medical examiners provided additional
testimony regarding the cause of death, the recovery of the
knife, the lineup procedures and other aspects of the
investigation. Of most importance for current purposes was
testimony by Detective Aguilar who stated that, in fact, he had
told petitioner the results of the lineup. Moreover, the context
of Aguilar's testimony seems to indicate that petitioner made his
spontaneous statement shortly after receiving this information.
See Trial Tr. at 266. Although this testimony seemingly
contradicted Aguilar's earlier testimony at the suppression
hearing, petitioner's counsel made no motion to reopen the
suppression hearing, nor did he otherwise renew his objection to
the admission of petitioner's statement.

(3)

Petitioner appealed his conviction to the Supreme Court of

New York, Appellate Division, Second Department ("Appellate Division").  In his brief, petitioner advanced the following nine claims: 1) the hearing court should have suppressed his statement to police; 2) the lineup was conducted in violation of defendant's right to counsel; 3) the photographic identification procedure was impermissibly suggestive; 4) the People withheld <u>Brady</u> material; 5) the trial court impermissibly restricted defendant's cross-examination; 6) he was denied a fair trial because of remarks in the prosecutor's summation; 7) the court gave an improper "no inference" charge; 8) petitioner received ineffective assistance of trial counsel; and 9) the evidence of his guilt was legally insufficient and the verdict against the weight of the evidence.  With respect to the first claim, petitioner cited Aguilar's trial testimony to support the claim that Detective Aguilar had induced petitioner's statement to the police by telling him he had been identified in the lineup.  In his brief, petitioner did not claim that the trial testimony was inconsistent with the testimony presented at the suppression hearing, or otherwise explain why he was asking the Appellate Division to consider information not presented to the hearing court.  <u>See</u> Brief for Defendant-Appellant at 19-22.

By decision and order dated February 20, 1996, the Appellate Division unanimously affirmed petitioner's judgment of conviction.  <u>People v. Acosta</u>, 224 A.D.2d 629, 639 N.Y.S.2d 709

(1996).  The Appellate Division ruled that the hearing court

properly denied suppression of petitioner's oral statement

because that statement was voluntarily and spontaneously made.

The court did not specifically address petitioner's arguments

concerning Aguilar's trial testimony.  Additionally, the

Appellate Division found no merit in petitioner's contention that

he was improperly denied counsel at the pre-accusatory lineup.

The Appellate Division held that the evidence was legally

sufficient and not against the weight of evidence and that

petitioner's remaining contentions "lack[ed] merit."  Id. at 630.

On April 12, 1996, petitioner's application to the New York

State Court of Appeals, for leave to appeal the Appellate

Division's affirmance of his conviction, was denied.  People v.

Acosta, 88 N.Y.2d 844, 644 N.Y.S.2d 690 (1996).

(4)

Petitioner's current pro se habeas corpus petition was

received on June 26, 1997.  The petition was dismissed sua sponte

on the grounds that it appeared to be untimely.  The Court of

Appeals for the Second Circuit ("Second Circuit") vacated the

dismissal and remanded the petition for reinstatement.  Acosta v.

Artuz, 221 F.3d 117 (2d Cir. 2000).

Following reinstatement, the State took the position that

petitioner had failed to demonstrate the violation of any

constitutional right.  The proceeding was referred to Magistrate

Judge Roanne Mann, who recommended that the petition be dismissed on the ground that none of petitioner's claims met the standard for granting relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> Report and Recommendation of Sept. 7, 2001 (Dkt. No. 27).  On January 22, 2002, an Order was issued adopting Judge Mann's Report and Recommendation. Petitioner then applied to Second Circuit for a Certificate of Appealability.

The Second Circuit granted a Certificate of Appealability for the limited purpose of remanding the case to the district court to reconsider whether the admission of petitioner's statement to Detective Aguilar violated his rights under <u>Miranda</u>. <u>See</u> Order of Sept. 25, 2002 (Dkt. No. 36).  The Second Circuit explained:

> Although Detective Aguilera testified at the pre-trial hearing that he did not recall, before taking appellant's statement, whether he had informed appellant that he had been identified in the lineup, he testified at trial that he did inform appellant that he had been identified, and that appellant then made the incriminating statement.  <u>See</u> trial transcript at 353-70; <u>Rhode Island v. Innis</u>, 446 US 291, 301 (1980); <u>United States v. Szymaniak</u>, 934 F.2d 434, 439 (2d Cir. 1991).  Because the district court did not consider whether, in light of Aguilera's testimony at trial, appellant's constitutional rights were violated by the admission of the statement, we remand so that the district court may make the determination.

<u>Id.</u>

## Discussion

The only issue remaining to be addressed on remand is petitioner's claim that a statement was admitted at trial that had been obtained by an interrogation conducted in violation of his <u>Miranda</u> right to the presence of counsel. The language of the Second Circuit could be construed as an instruction to address the <u>merits</u> of petitioner's constitutional claim in light of Detective Aguilar's trial testimony. However, it is equally possible that the Second Circuit was merely concerned that Magistrate Judge Mann's recommendation, and the analysis on which it was based, failed to address issue at all, thereby intending that the decision be reconsidered in light of this apparently overlooked factor. In either event, it is still necessary to consider, as a preliminary matter, whether petitioner's claim, <u>to the extent that it relies on this information</u>, should be barred on procedural grounds since the State has not waived its defense under the AEDPA. In that regard, it will not be assumed that the Second Circuit's summary order was intended to preclude consideration of, or otherwise resolve, the issue regarding the procedural bar. Moreover, this court's previous determination that the merits could be reached generally is not necessarily dispositive. Hence, two procedural issues remain open: whether petitioner's claim, to the extent that it depends on Detective Aguilar's trial testimony, was (1) rejected on an adequate and

independent state ground or (2) fairly presented to the state courts under the exhaustion requirement.

Whether in the context of a _habeas_ proceeding or on direct review, a federal court may not review a question of federal law decided by a state court where the state court's decision rests on a state ground that is both _independent_ of the federal question and _adequate_ to support the judgment. _See_ _Coleman v. Thompson_, 501 U.S. 722, 729 (1991); _Harris v. Reed_, 489 U.S. 255, 262 (1989); _Wainwright v. Sykes_, 433 U.S. 72, 81 (1977). There is a conclusive presumption of federal jurisdiction unless the state court clearly and expressly states that its decision relies on independent state grounds. _See_ _Coleman_, 501 U.S. at 733; _Harris_, 489 U.S. at 263; _Michigan v. Long_, 463 U.S. 1032, 1040-41 (1983). New York's variant of the contemporaneous objection rule, N.Y. Crim. Proc. Law §§ 470.05(2), would ordinarily qualify as such a ground. _See_ _Garcia v. Lewis_, 188 F.3d 71, 78-79 (2d Cir. 1999). However, as petitioner correctly points out, the Appellate Division gave no indication whatsoever, in rejecting petitioner's claim on the merits, that it had failed to consider Detective Aguilar's testimony in reliance upon any state procedural rule. _See_ _Acosta_, 224 A.D.2d at 630, 639 N.Y.S.2d at 709. Therefore, petitioner's claim cannot be rejected on this basis.

A similar but distinct issue is whether petitioner exhausted

this claim by fairly presenting it to the state courts. Before
seeking federal <u>habeas</u> relief, petitioner must exhaust his state
remedies, pursuant to 28 U.S.C. § 2254(b)(1), so that the state
receives "'the opportunity to ... correct' alleged violations of
the prisoner's federal rights." <u>Baldwin v. Reese</u>, 541 U.S. 27,
29 (2004) (citing <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (<u>per
curiam</u>)(quoting <u>Picard v. O'Connor</u>, 504 U.S. 270, 275 (1971))).
"To provide the State with the necessary 'opportunity,' the
prisoner must 'fairly present' his claim in <u>each</u> appropriate
state court ..., thereby alerting that court to the federal
nature of the claim." <u>Baldwin</u>, 541 U.S. at 29 (emphasis added)
(citations omitted). "[A]s a general matter, the burden is on
the petitioner to raise his federal claim in the state courts <u>at
a time when state procedural law permits its consideration on the
merits</u>, even if the state court could have identified and
addressed the federal question without its having been raised."
<u>Bell v. Cone</u>, 125 S.Ct. 847, 851 (2005) (emphasis added). To
"fairly present" the claim to the state court, the petitioner
"must have informed the state court of both the factual and the
legal premises of the claim he asserts in federal court." <u>Daye
v. Attorney Gen. of State of N.Y.</u>, 696 F.2d 186, 191-92 (2d Cir.
1982) (<u>en</u> <u>banc</u>). "[W]here the claim has been presented for the
first and only time in a procedural context in which its merits
will not be considered unless there are special and important

11

reasons therefor, raising the claim in such a fashion will not, for such a purpose, constitute fair presentation." Castille v. Peoples, 489 U.S. 346, 351 (1989).

The new information contained in Detective Aguilar's trial testimony did not come to light until after petitioner's statement to Detective Aguilar had already been admitted in evidence. At no point, thereafter, did petitioner's counsel renew his motion to suppress the statement or request a mistrial, curative instruction or any other remedy. Moreover, since the suppression hearing had been held before a different judge, the trial court could not have been aware of the contradiction with Detective Aguilar's previous testimony and could not even have had any basis to reopen the issue or reconsider it sua sponte. Thus, petitioner failed to fairly present the issue before either the hearing court or the trial court.

Nor is the situation salvaged by the presentation of the issue on appeal. Concededly, New York's intermediate appellate courts have broad jurisdiction "as a matter of discretion and in the interests of justice," even when an error is not properly preserved at trial. See N.Y. Crim. Proc. Law § 470.15(3)(a). Invoking such jurisdiction requires a finding that the unprotested error deprived the defendant of a fair trial. See N.Y. Crim. Proc. Law § 470.15(6)(a). Nonetheless, it is clear that petitioner's claim, to the extent that it relies on

Detective Aguilar's trial testimony, was presented for the first time in a procedural context where its merits would not be considered in the absence of special or important reasons.  See People v. Gold, 249 A.D.2d 414, 415 470 N.Y.S.2d 789 (2d Dept. 1998) ("It is well settled that trial testimony may not be considered in evaluating a suppression ruling on appeal."); but see People v. McCormick, 39 A.D.2d 590, 331 N.Y.S.2d 840 (2d Dept. 1972) (reversing order denying suppression motion in the interests of justice where officer's trial testimony was "in basic and flagrant contradiction" with that presented at suppression hearing).  Since the evidence of Aguilar's trial testimony was presented in a context where it would not ordinarily have been considered, petitioner's claim, to the extent that it is based thereon, fails the "fair presentation" tests articulated in Castille and Bell.

Concededly, the language of Castille and Bell should not be construed to hold that a trial error not preserved at the trial level can never be exhausted by a presentation to an appellate court.  However, such errors are ordinarily considered fairly presented in situations where the appellate court did in fact consider the merits of the unpreserved claim, or where such can be fairly presumed.[2]  Cf. Rudenko v. Costello, 286 F.3d 51, 69

---

[2]As noted above, even where an appeals court does address an unpreserved claim on the merits, when the appeals court invokes the preservation requirement in the alternative the claim remains

(2d Cir. 2002).  Here, in contrast, the Appellate Division

considered a _preserved_ claim that the hearing court erred in

failing to suppress petitioner's statement and, in doing so, <u>did

not consider</u> information that had not been properly presented

below, and which the prosecution never had the opportunity to

confront and challenge.  As applied to each legal claim, it is

reasonably consistent with the principle of comity to presume

that appellate courts have addressed the merits of all claims

raised on appeal, where they do not explicitly say otherwise.

<u>Cf.</u> <u>id.</u> (applying such a presumption for purposes of determining

whether to apply deference under the AEDPA for State decisions on

the merits).  A considerably greater burden is placed on

appellate courts if they are required to subdivide each claim

into the various factual claims and arguments offered in support

thereof, and to explicitly state their grounds for failing to

consider each one.  Here, the information was contained in the

body of the appellate brief, and the defendant never explicitly

notified the appellate court that he was asking it to consider

information inconsistent with that before the hearing court

below.

At least one secondary authority has inferred, from case

law, that "[r]aising a claim on direct appeal exhausts it even if

_____

barred due to reliance on an <u>independent and adequate state

ground</u>, which is a separate source of procedural bar from that of

exhaustion through "fair presentation."

it was not presented at trial" and that this principle will overcome "any exhaustion problems." See R. Hertz and J.S. Liebman, Federal Habeas Corpus Practice and Procedure 963, 964 n19 (4th ed. 2001). However, exceptions to this rule support the proposition that it only applies where the higher court has actually addressed the merits of the claim. See Satterwhite v. Lynnaugh, 886 F.2d 90, 92-93 (5th Cir. 1989) (exhaustion requirement not satisfied by presentation of claim in supplemental pro se brief filed during direct review only); Parkhurst v. Shillinger, 128 F.3d 1366, 1369 (10th Cir. 1997) (petitioner's presentation of ineffective assistance for the first time in petition for certiorari to state supreme court did not adequately present claim to state courts "[b]ecause review under Wyoming's certiorari petition procedure is discretionary and limited").

Petitioner's claim, therefore, to the extent that it relies on Detective Aguilar's trial testimony, has not been properly exhausted. Since petitioner no longer has any state remedies available to him, his claim, insofar as it relies on the trial testimony of Detective Aguilar, must be deemed exhausted, but procedurally barred. See Coleman, 501 U.S. at 732; Bosset v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994). A federal court reviewing a habeas petition may not review a procedurally barred claim "unless the prisoner can demonstrate cause for the default

15

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.  Since petitioner has not alleged cause and prejudice, and presents no grounds for finding that a failure to address the merits would result in a fundamental miscarriage of justice, there appears to be no basis upon which this court could reach the merits of his claim.

Even if the merits of petitioner's claim could be addressed, this court would still find itself unable to rule in his favor, under the standards of deference mandated by the AEDPA.  As applied here, these standards require a finding that the state court's adjudication either resulted in a decision that involved ... an unreasonable application of clearly established Federal law as determined by the Supreme court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).[3]

Aguilar's trial testimony at most suggests the possibility that the factual findings upon which the New York state courts

---

[3]Alternately, relief may be granted under the AEDPA where the adjudication "resulted in a decision that was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  There is no allegation here that any state court applied incorrect legal principles in rejecting petitioner's claim.

relied may have been incorrect. However, since this testimony
was unavailable to the hearing court, one clearly cannot argue on
the basis of such information that the hearing court made
unreasonable findings of fact, or applied the law in an
unreasonable manner. Nor can it be said of the Appellate
Division that it was unreasonable of it to give little weight to
information that was not made available to the fact-finder below,
and whose significance the prosecutor was never afforded the
opportunity to challenge, even if one assumes the Appellate
Division was obliged to consider the testimony at all.

Once a suspect who is in custody, having received <u>Miranda</u>
warnings, invokes his right to an attorney, all interrogation
must then cease until an attorney is present. <u>See</u> <u>Rhode Island</u>
<u>v. Innis</u>, 446, U.S. 291, 297 (1980) (citing <u>Miranda v. Arizona</u>,
384 U.S. 436, 473-74 (1966)). "[T]he term "interrogation" under
<u>Miranda</u> refers not only to express questioning, but also to any
words and actions on the part of the police (other than those
normally attendant to arrest and custody) that police should know
are reasonably likely to elicit an incriminating response from
the suspect." <u>Innis</u>, 446 U.S. at 301. In order to conclude that
Aguilar interrogated petitioner under this definition, if would
be necessary to conclude first, that Aguilar's statement at trial
was an accurate memory, second, that Detective Aguilar's words to
petitioner were such that they were not normally attendant to
arrest and custody and, finally, that these words were such that

they were reasonably likely to elicit an incriminating response.

All three propositions are too doubtful to justify reversing the state courts' findings.  At the hearing, which occurred more than nine months after the lineup, Detective Aguilar's memory already seemed unclear.  He initially testified at the hearing that the statement was made <u>before</u> the lineup.  <u>See</u> Hr'g Tr. at 39.  However, he reversed himself later in the hearing after consulting reports which indicated the lineup procedures occurred from 6:19 p.m. to 6:26 p.m., and that the statement was made at 8:45 p.m..  <u>Id.</u> at 16-19, 41-42.  There is a real possibility that his testimony at trial, after the passage of another eight months, could likewise have been based on a confused or false memory.  Also, although Aguilar's trial testimony, in context, appears to indicate that he informed petitioner of the lineup results <u>before</u> petitioner made his statements, Aguilar never explicitly clarified that his memory was certain as to the timing.  <u>See id.</u> at 39.

It is, nonetheless, reasonably probable that, in the two hours since the lineup, police told petitioner something to indicate that he had been identified and was, therefore, being retained in custody.  Such police conduct could reasonably be construed as "normally attendant to arrest and custody" under <u>Innis</u>.  A suspect who has just been subjected to a lineup is naturally curious to learn the results, and it would be an odd

result if <u>Innis</u> were interpreted as forbidding police from
providing this information.  It is certainly possible to confront
a defendant with evidence against him in a manner that violates
<u>Innis</u>.  <u>See</u> <u>Arizona v. Mauro</u>, 481 U.S. 520, 526 (1987)
(suggesting lineups in which a coached witness would pick the
defendant as the perpetrator might constitute interrogation under
<u>Innis</u>).  However, the mere fact that petitioner was provided such
information before he made his statement does not in itself
suffice.  <u>See</u> <u>United States v. Guido</u>, 704 F.2d 675, 677 (2d Cir.
1983) (finding no interrogation under <u>Innis</u> where agents merely
supplied defendant with general information about the crime
defendant was suspected of committing in response to defendant's
own questions); <u>see also</u> <u>United States v. Cotta</u>, 953 F.2d 753,
759 (2d Cir. 1992).

Aguilar's testimony at the hearing and at trial was that
petitioner indicated he wished to speak to the district attorney.
Aguilar's response reminded petitioner that he had already
already invoked the right to counsel, indicated that Aguilar
could provide him with no interaction concerning any statement he
made until his counsel was present, and promised only that
Aguilar would write down any statement petitioner made
(presumably to be used against him).  Hence, even if Aguilar's
trial testimony is taken into account and credited, there is no
basis for concluding that Aguilar interacted with petitioner in a

manner that was reasonably calculated to induce an incriminating response.

## Conclusion

For these reasons, petitioner's application for a writ of _habeas_ _corpus_ is dismissed.  Further, as the petition presents no questions of substance for appellate review, a certificate of appealability is denied.  The Clerk of Court is directed to enter judgment and close the case.

Dated:     Brooklyn, New York
           July 6, 2005

                                   SO ORDERED:


                                   _____/s/_____
                                   David G. Trager
                                   United States District Judge

SENT TO:

MARJORIE M. SMITH
1 Kings Highway
Tappan, New York 10908

MORGAN J. DENNEHY
Office of Charles J. Hynes
Kings County District Attorney
350 Jay Street
Brooklyn, New York 11201-2908